## IN THE CIRCUIT COURT FOR FREDERICK COUNTY MARYLAND

**LOURDES HARDING**
2140 Wainwright Court
Apt. BD
Frederick, MD 21702

    Plaintiff

v.

    Case No: C-10-CV-18-000562

**FREDERICK COMMUNITY COLLEGE**
7932 Opossumtown Pike
Frederick, MD 21702

    Defendant

### COMPLAINT

COMES NOW Lourdes Harding ("Plaintiff" or "Lourdes"), by and through undersigned counsel, who brings the present suit against Frederick Community College ("Defendant" or "FCC") and for grounds states as follows:

### Parties and Jurisdiction

1. The Plaintiff is a resident of Frederick County Maryland and brings this suit in her personal capacity.

2. The Defendant is a community college located in Frederick County Maryland.

3. At all times relevant to the allegations of this Complaint, the Plaintiff was enrolled as a student at FCC and matriculated in Frederick County Maryland.

4. In the present suit, the Plaintiff claims that she was retaliated against for engaging in protected conduct in violation of 42 U.S.C. 2000d.



EXHIBIT 2

5. Pursuant to the preceding, this Court (i) possesses personal jurisdiction over the Defendant, (ii) maintains subject matter jurisdiction over the cause of action being pursued, and (iii) constitutes proper venue.

## General Allegations

6. Lourdes was admitted into FCC"s Surgical Technician Program ("Program") to begin in September of 2017. The Program is a one-year program and consists of both classroom work and clinical training.

7. In November of 2017, Lourdes, along with one other classmate, was assigned to Frederick Memorial Hospital ("FMH") for her clinical training.

8. In December of 2017, Lourdes received a "satisfactory" rating from Nancy Dankanich ("Nancy") for her 2017 clinical work. Nancy was both in charge of the FCC Program as well as the FCC supervisor for students doing their clinical training at FMH.

9. On or about January 29, 2018, the second semester started and Lourdes reported back to start classes and continue with her clinical training at FMH.

10. On February 9, 2018, Nancy pulled Lourdes aside following her clinical session at FMH and informed her that (i) people at FMH did not like her and did not like to work with her, and (ii) she had two options-- to move to the Howard Surgical Center in Columbia Maryland in order to finish her surgical training or drop out of the program. Nancy further told Lourdes that she had the weekend to think about her decision.

11. Based upon information and belief, in fact no personnel at FMH had any problems with Lourdes' work or working with her.

12. After being informed about the events above, Rita Harding ("Rita"), Lourdes' mother in law, first called Janet Harding ("Janet") of FMH and relayed what had happened. In this

conversation, Rita specifically asserted her concerns that Nancy's actions towards Lourdes may have been motivated by a discriminatory animus towards Lourdes because of her Hispanic accent and ethnicity.

13. The basis for Rita's assertion of a potential discriminatory animus on the part of Nancy was due to the fact that Lourdes had expressed concerns to Rita on more than one occasion during her first semester in the Program that she believed Nancy did not like her because of being Hispanic and speaking with an accent. Lourdes' concerns about Nancy's possible discriminatory animus towards her began very early in Lourdes' first semester when Nancy pulled her aside and questioned her, without any basis for doing so, about how much English Lourdes understood. On another occasion, Lourdes believed that Nancy's statement to the class about possible cheating on exams (given the high scores) was really being directed towards her because of the fact that Lourdes did very well on the examination.

14. Following her telephone call to Janet, Rita next called FCC and was ultimately directed to Nancy's voice mail where she left a message basically stating that she [Rita] was very upset by the fact that Lourdes was being told to leave FMH and that she [Rita] wanted to speak with someone because of her concerns that Lourdes' Hispanic ethnicity and accent may have been factors in the decision.

15. Following her telephone message to FCC, Rita next called Beth Douthirt Cohen ("Beth") of FCC and informed her about the events. Again, Rita specifically asserted her concerns that Nancy's actions towards Lourdes may have been motivated by a discriminatory animus towards Lourdes because of her Hispanic accent and ethnicity. Beth requested Rita to have Lourdes contact her.

16. Lourdes called Beth later that afternoon and set up a meeting for Monday February 12 at 1:00 pm. In this telephone call, Lourdes told Beth that she felt that she was being discriminatorily dismissed from FMH (but did not go into any details at this time).

17. At 9:53 pm that evening (still February 9), Lourdes received a text from Nancy stating that the FMH personnel (Lena Bowie, Deb Blankenship, and Sharon Chilton) would be willing to work with her at FMH over the next few weeks and would Lourdes be interested. Lourdes responded that she would be interested.

18. On Monday February 12, Lourdes attended class in the morning and then met with Maryrose Wilson ("Maryrose") of FCC, Beth, and Ian Harding ("Ian"), Lourdes' husband. The following topics were discussed:

- Beth and Maryrose asked Lourdes to retell the conversation that she had with Nancy.
- Lourdes then told them about the text she received from Nancy the previous Friday night.
- Lourdes shared her beliefs that this all happened because of her ethnicity and accent. Lourdes specifically recapped the incident where Nancy had asked her about whether she [Lourdes] understood English.
- Beth and Maryrose stated that Lourdes should continue to attend her classes and to go to FMH for her clinical training.

19. On February 14, Lourdes reported to FMH and worked with Lena that day. At the end of her work, Lourdes, Lena, and Nancy met to go over Lourdes' grading for the day. Lena began rating Lourdes with 3's until Nancy told her to rate her with 1's (the lowest rating). In fact, there was no basis for Nancy's ratings.

20. On February 15, Lourdes reported to FMH and again worked with Lena that day. Lena graded Lourdes as unsatisfactory in accordance with Nancy's desires even though Lourdes' work that day was satisfactory.

21. Following the grading, Nancy then pulled Lourdes aside so that the two of them were alone and the following conversation occurred:

- Nancy told Lourdes that she had two options-- to either drop out of the Surgical Tech Program and receive a withdrawn or, if she refused to do so, Lourdes would receive an F on her transcript.
- Lourdes responded by stating that she would agree to go to Howard Surgical to complete her clinical training.
- Nancy then told Lourdes that Howard was no longer an option because the position had been filled by another student who was transferred there from Shady Grove hospital. Based upon information and belief, Nancy knew this statement to be false.

22. Notwithstanding this conversation with Nancy, on February 16 Lourdes reported to FMH and again worked with Lena. At the conclusion of her work, Lena again graded Lourdes with all 1's in accordance with Nancy's desires even though Lourdes' work that day was satisfactory. Nancy then told Lourdes to (i) go to her locker and clean it out; (ii) go to security to return her badge; and (iii) apply to Montgomery College if she was not going to change her career path because she [Nancy] would not accept Lourdes into her program.

23. Notwithstanding this conversation with Nancy, Lourdes reported to class on Monday February 19. Following class, Nancy approached Lourdes with papers that she wanted Lourdes to sign indicating that Lourdes was withdrawing from the program. Nancy stated that if Lourdes did not sign the withdrawal, Lourdes would lose all of her tuition money, would not pass the course, and would not be able to ever get a job as a technician. Under this duress, Lourdes

signed the papers. However, Lourdes refused to add to the form, as instructed to do by Nancy, that her reasons for withdrawing were due to family problems and stress.

24. Later that same day at 1:30 pm, Lourdes, Ian, Maryrose and Beth met in Beth's office with Rita and Keith Harding ("Keith") attending by phone. This meeting had been pre-scheduled. At this meeting, Lourdes explained what had happened since their last meeting. Maryrose and Beth assured her that the document would not be effective because of the duress. Beth and Maryrose told Lourdes that they would discuss options and get back with her.

25. On February 22, the same group of people as on February 19 met again in Beth's office where the following took place:

- Beth stated that Lourdes could finish her clinical training at the Reston Out-patient Operating Center and guaranteed that Nancy would have absolutely no involvement in this plan. Lourdes would report to Angela Goslan ("Angela") at Reston.
- However, Beth also indicated that they wanted Lourdes to retake the surgical skills assessment component from the ST 100 course, which had been given in the Fall of 2017 and which Lourdes had passed.
- Rita asked if they were talking about the same test. Keith wanted to know why, if Lourdes had already passed the test, she was now being required to take it again.
- Beth responded by stating that it was the same test and that Lourdes was being asked to take it again because of questions being raised at FMH.
- Rita responded that the only question being raised concerning Lourdes' performance were those being raised by Nancy.
- At this point Lourdes indicated that she had passed the test once and that she would have no problem taking it again if it would allow her to go to Reston and finish the Program.

26. On February 23, Lourdes sent an email to Angela with two questions that she had about the exam that had been scheduled for Saturday Feb. 24. Angela wrote back indicating that she knew no specifics about the test and that she emailed Nancy who would get back to her. Later that day, Lourdes received a long email from Nancy outlining in great detail everything that would happen with the test. Lourdes did not understand why Nancy was involved with the test at all given that Beth and Maryrose had advised Lourdes that Nancy would have nothing to do with the test.

27. On February 24, Lourdes took the test at 3:30 pm. While the same skills were being tested as when Lourdes took the test the first time, this test was significantly more difficult because:

- It involved a much more complicated surgery and required the use of a great many more instruments.
- There were three testers instead of one (thus creating a much more intimidating atmosphere).
- Unlike in the first exam, times were not called out by the testers.
- Unlike in the first exam, instruments were purposefully hidden or dropped on the floor to make the exam more difficult.
- Unlike in the first exam, mistakes were not pointed out and Lourdes was not allowed to redo any tasks.

28. Notwithstanding these obstacle, Lourdes was confident that she had performed in a satisfactory manner and had passed the test.

29. However, later that evening, Lourdes received an email from Marina (one of the testers) that she had failed the exam.

30. On February 27, Lourdes sent an email to Maryrose, Beth, and Joyce again accusing Nancy of discrimination and harassment. To help bolster her claim, she also raised allegations of possible discrimination against a former student Hafsa White.

31. Rita sent an email at 12:53 p.m. to Maryrose inquiring about next steps and reiterating concerns of discrimination.

32. On March 1, a meeting was held with Dr. Tony Hawkins of FCC, Beth, Maryrose, Joyce Ruane, Ian, and Lourdes, with Rita and Keith participating by phone. Rather than addressing the Saturday exam, Lourdes was told about the options to either request a grade change (apparently everyone but Lourdes and her family were aware that an F was already on Lourdes' transcript) or request a formal discrimination investigation that would be done by an outside investigator. Dr. Hawkins also mentioned in this meeting that he had the detailed results of the February 24 test but would not share them. He also stated to Lourdes that "if you were anyone else you would already have been thrown out of the program."

33. Instead of either of the options presented to her at the March 1 meeting, Lourdes, through counsel, chose to initiate a claim by way of a April 17, 2018 letter to President Elizabeth Burmaster.

34. By way of a June 18, 2018 letter from FCC's liability insurance carrier, Lourdes' claim was denied.

## Count I: Violation of 42 U.S.C. 2000d ("Title VI")

35. The Plaintiff repeats and realleges each of the allegations in paragraph 1—34 above as if stated herein.

36. Title VI prohibits recipients of federal financial assistance from engaging in various forms of discrimination and retaliation.

37. Based upon information and belief, at all times relevant to these allegations the Defendant was a recipient of federal financial assistance.

38. The Plaintiff has standing to sue in the present case as she was enrolled at FCC, participated as a student, and was an intended beneficiary of FCC's Program.

39. Lourdes engaged in protected opposition conduct when, on numerous occasions, she, (or through family members) voiced concerns to FCC about her beliefs of being the target of a discriminatory animus due to her being Hispanic and speaking with a Hispanic accent.

40. Lourdes was subjected to adverse actions when she was (i) removed from the clinical program at FMH; (ii) required to retake the surgical skills test in which it was preordained that she would fail; (iii) given a failing grade for her work in the Program; and (iv) terminated from the Program.

41. The adverse actions all occurred within a very close proximity of time to the protected conduct.

42. There were no legitimate reasons for FCC taking any of the adverse actions against the Plaintiff.

43. In fact, all of the adverse actions were taken in retaliation against Lourdes for engaging in protected opposition conduct.

44. As a result of FCC's unlawful actions, Lourdes has suffered, and will continue to suffer, economic loss in the form of (i) lost tuition and fees and (ii) lost income as a Surgical Technician.

45. As a result of FCC's unlawful actions, Lourdes has suffered, and will continue to suffer, from emotional distress, humiliation, anger, frustration, embarrassment, and loss of self-worth.

46. At all relevant times, the Defendant had full notice of the claimed retaliation but failed to take adequate steps to curtail the retaliatory actions.

47. To the extent the present suit is subject to any of the requirements of the Local Government Tort Claims Act, which Plaintiff denies is applicable, the notice provisions of such Act have been met as the April 17, 2018 letter sent to FCC's President constituted notice in compliance with Courts and Judicial Proceedings Article 5-304.

WHEREFORE, Plaintiff demands judgement against the Defendant and requests that the following relief be awarded:

a. A declaration that the Defendant violated 42 U.S.C. 2000d;

b. Economic damages in the amount of $90,000.00;

c. Non-economic damages in the amount of $75,000.00;

d. Pre-judgment interest on the economic damages;

e. Equitable relief in the form of revisions to the Plaintiff's student record;

f. Reasonable attorneys' fees and costs; and

g. Such other and further relief as deemed appropriate by this Court.

Respectfully submitted,

/s/ Mitchell Batt
Mitchell Batt
The Law Office of Mitchell Batt
451 Hungerford Drive, Suite 200
Rockville, MD 20850
301-580-6902 (T)
301-424-0105 (F)
mbatt@verizon.net
Counsel for Plaintiff

## JURY DEMAND

The Plaintiff, through counsel, hereby requests a jury trial on all issues so triable,

By: /s/ Mitchell Batt

Mitchell I. Batt, Esquire